IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

Jimmy D. Crigger,                    )
    Plaintiff,                        )
                     )
v.                                            )          1:15cv713 (LMB/IDD)
                     )
Dr. Wright and Nurse Johnson,    )
    Defendants.                     )

MEMORANDUM OPINION

     Jimmy D. Crigger, a Virginia inmate proceeding pro se, has filed a civil rights action,

pursuant to 42 U.S.C. § 1983, alleging that he suffered deliberate indifference to his serious

medical needs during his confinement at the Riverside Regional Jail ("RRJ").  The matter is

presently before the Court on the Motion for Summary Judgment of defendant Dr. Karen Wright.

Defendant submitted a memorandum of law with several exhibits in support of her position, and

provided plaintiff with notice and an opportunity to file responsive materials, as required by

Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).  Plaintiff responded by

filing his Opposition to the Motion for Summary Judgment with a supporting memorandum and

exhibits, and Dr. Wright subsequently filed a rebuttal brief.  After careful consideration of these

submissions, the Motion for Summary Judgment will be granted.

**I. Background**

     The following material facts are uncontested. On April 2, 2015, plaintiff was tested for

Hepatitis C.  On April 13, 2015, Nurse Johnson informed plaintiff that he was positive for

Hepatitis C but that he did not need treatment. Am. Compl. §IV.  Plaintiff began to research the

effects of Hepatitis C and learned that it is a "deadly and fatal disease if not treated." Id.  He also

discovered that a "new drug called Harvoni" is used to treat the disease and "has a very high

success rate." Id. Plaintiff wrote "several" request forms to the medical department at RRJ, asking to receive treatment for his Hepatitis C. Id.

On April 23, 2015, Dr. Wright met with plaintiff to discuss his request for treatment. Wright Aff. ¶ 1. She explained to plaintiff that treatment for Hepatitis C ordinarily is not initiated in a local jail because the treatment lasts over a "significant" period of time and requires monitoring that is difficult to provide for an inmate who might be transferred to the Virginia Department of Corrections ("VDOC") or released at any time. Wright Aff. ¶ 2. Dr. Wright told plaintiff that it is believed to be harmful for a patient to begin treatment for Hepatitis C and then interrupt the treatment prior to completion. Id. Additionally, she informed plaintiff that Hepatitis C is not an illness that progresses quickly, and that he was unlikely to suffer any injury by waiting until he was in VDOC custody or released from incarceration to begin treatment. Id. Hepatitis C patients are monitored for signs of injury from the disease through tests for liver function, protein levels, and protein-to-creatinine ratios, and Dr. Wright told Crigger that he had no signs of problems in any of those areas. Wright Aff. ¶ 3. Further, she explained to plaintiff that he could request Hepatitis C treatment if he were transferred to VDOC custody, but that he likely would be required to commit to quitting IV drug use and getting prison tattoos, as both of those activities would put him at high risk for additional Hepatitis C exposure. Wright Aff. ¶ 4.

Dr. Wright attests that Hepatitis C is caused by a virus that infects the liver and leads to inflammation. Wright Aff. ¶ 5. It is a slow-moving infection, and damage usually takes 20 to 30 years to occur. Id. A diagnosis of Hepatitis C does not require immediate treatment, particularly when a liver test provides no evidence of significant abnormalities. Id. Unless a patient has an acute Hepatitis C infection, there may be little or no progression of the disease over months or years, and while Crigger was under Dr. Wright's care he had no signs or symptoms that he was

2

suffering from an acute infection. Id.

At the time of the events at issue here, the drug Harvoni was not an available treatment regimen at RRJ. Wright Aff. ¶ 6. Instead, treatment for Hepatitis C involves the administration of a combination of multiple medications over a period of 48 weeks to clear the virus from the patient's body. Id. During that time the patient is monitored by medical providers, and after the treatment is administered the patient receives follow-up blood tests to determine the status of the disease. If the patient remains positive for Hepatitis C, an additional round of treatment might be undertaken. Id. There are concerns within the medical community regarding the impact of interrupting such treatment, and it is not recommended that a patient discontinue and then restart the treatment regimen. Wright Aff. ¶ 8. Because of these concerns, in-depth testing and treatment for Hepatitis C is ordinarily not initiated in local jails in Virginia, as an inmate's treatment can be interrupted if he is transferred or discharged from the jail. Wright Aff. ¶ 9. In fact, plaintiff left RRJ within six (6) months of his conversation with Dr. Wright and would not have been able to complete the Hepatitis C treatment regimen had it been initiated when he requested it. Wright Aff. ¶ 10.

Crigger filed this action for relief under § 1983 on June 5, 2015, alleging that the failure to provide him with treatment for his Hepatitis C amounted to deliberate indifference to his serious medical needs, and seeking monetary damages and immediate treatment of his Hepatitis C infection. By an Order entered July 8, 2015, plaintiff was directed to sign and return a Consent Form and an affidavit concerning exhaustion of his administrative remedies, and his claim against defendant Correct Care Solutions was dismissed with prejudice for failure to state a claim. By a separate Order dated September 25, 2015, plaintiff was prompted to file an amended complaint. On December 1, 2015, the complaint was filed in forma pauperis, and service was

3

directed on remaining defendants Dr. Wright and Nurse Johnson. At this juncture service has not

been effected on Nurse Johnson, and as more than 120 days have passed since the complaint was

filed, she will be dismissed from the action, without prejudice, pursuant to Fed. R. Civ. P. 4(m).

## II.  Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that judgment on

the pleadings is appropriate.  See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving

party bears the burden of persuasion on all relevant issues).  To meet that burden, the moving

party must demonstrate that no genuine issues of material fact are present for resolution.  Id. at

322.  Once a moving party has met its burden to show that it is entitled to judgment as a matter of

law, the burden then shifts to the non-moving party to point out the specific facts which create

disputed factual issues.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita

Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In evaluating a motion

for summary judgment, a district court should consider the evidence in the light most favorable

to the non-moving party and draw all reasonable inferences from those facts in favor of that

party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Those facts which the moving

party bears the burden of proving are facts which are material.  " [T]he substantive law will

identify which facts are material.  Only disputes over facts which might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment." Anderson,

477 U.S. at 248.  An issue of material fact is genuine when, "the evidence ... create[s] [a] fair

doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp.,

4

759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Applicable Law

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need.[1] Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). To establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105. Thus, to prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must demonstrate both the objective and the subjective component of the cause of action. Hudson v. McMillian, 503 U.S. 1, 20 (1992). The objective component consists of showing that plaintiff suffered from a sufficiently serious medical need. A serious medical need in this context has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Bane v. Va. Dep't of Corr., 2012 WL 6738274 at *6 (W.D. Va. Dec. 28, 2012) (citations omitted); see, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is serious).

The subjective component necessary to establish deliberate indifference requires a

---

[1]During his incarceration at RRJ plaintiff was a state-responsible inmate, Mo. for Summ Judg. at ¶ 10, and his claim consequently arises under the Eighth Amendment.

demonstration that prison medical personnel acted with a sufficiently culpable state of mind.

That is, the plaintiff must prove that a particular defendant actually knew of and disregarded "an

excessive risk to human health or safety." Farmer v. Brennan, 511 U.S. 825, 835 (1994).  To do

so plaintiff must demonstrate both that facts existed from which the medical provider could infer

the existence of a substantial risk of harm to plaintiff, and that the provider actually drew that

inference. Id. at 837.  Further, the plaintiff then must show that after drawing the inference, the

provider disregarded the risk by failing to take "reasonable measures" to alleviate it, id. at 832,

"by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.

1990).  Courts have emphasized that the subjective component of a deliberate indifference claim

is not satisfied by a showing of medical malpractice, since the wantonness necessary to establish

a constitutional violation goes well beyond negligence or a failure to act reasonably.  Patten v.

Nichols, 274 F.3d 829, 834 (4th Cir. 2001).  Nor can an "attempt to second-guess the propriety

or adequacy of a particular course of treatment" received by an inmate establish deliberate

indifference, Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir 1977);  instead, "[p]rison officials

evince deliberate indifference to a serious medical need by completely failing to consider an

inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate

medical care." Hicks v. James, 255 Fed. App'x 744, 749 (4th Cir. 2007). In other words, the

failure to provide treatment must have been"[s]o grossly incompetent, inadequate, or excessive

as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851

(citations omitted).

A delay in medical treatment may constitute deliberate indifference.  See Smith v. Smith,

589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104-05).  In such cases, in addition

to establishing that his medical need was objectively serious, a plaintiff  also must show that the

delay in providing medical care caused him to suffer "substantial harm." See Webb v. Hamidullah, 281 Fed. App'x. 159, 166 (4th Cir. 2008); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Shabazz, 2011 WL 2489661, at *6; see also, Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D. Va. 1995).

## IV. Analysis

When the foregoing principles are applied to the undisputed facts at bar, Dr. Wright is entitled to the summary judgment she seeks. Distilled to its essence, plaintiff's claim amounts to a disagreement with Dr. Wright over whether immediate treatment for his newly-diagnosed Hepatitis C infection was required during his confinement at RRJ. As discussed below, plaintiff has failed to establish the subjective component of a successful claim of deliberate indifference against Dr. Wright.

In her affidavit, Dr. Wright explains that the medical community deems it inadvisable to interrupt a course of treatment for Hepatitis C once it has begun. For that reason, in the absence of acute symptoms treatment for Hepatitis C is not initiated while an inmate is confined in a local jail, because the inmate is likely to be transferred or released before the treatment regimen is completed. While Dr. Wright does not dispute plaintiff's allegations that Hepatitis C is a potentially fatal disease if it remains untreated, she attests that it is a slow-moving infection which usually takes 20 to 30 years to cause detectable damage. Thus, in the absence of a liver test indicating significant abnormalities, a diagnosis of Hepatitis C does not require immediate treatment. In plaintiff's case, he showed no signs or symptoms that he was suffering from an acute infection while he was under Dr. Wright's care. Wright Aff. ¶ 5.

7

Under these circumstances, Dr. Wright's decision to defer treatment for plaintiff's Hepatitis C until he entered VDOC custody or was released amounted to adherence to reasonable medical policy. As she explains, her decision was based on the facts that Hepatitis C typically progresses slowly and plaintiff showed no signs of acute infection while confined at RRJ. In addition, deferring treatment would allow plaintiff the advantage of being able to receive the full course of treatment without interruption, which is believed by the medical community to be advantageous. Numerous cases support the conclusion that such a considered decision by a physician to delay or to forego treatment for an inmate's non-acute Hepatitis C does not amount to deliberate indifference. See, e.g., Lee v. Gurney, 3:08cv161, 2011 WL 2681225 at *4 (E.D. Va. July 8, 2011) (physician's decision not to treat inmate's Hepatitis C because inmate's disease had not yet progressed to a point where treatment was medically warranted or prudent did not amount to ineffective assistance); Motley v. Harris, 1:09cv797 (LMB/IDD), 2010 WL 3430820 at *4 (E.D. Va. Aug. 27, 2010) (awarding summary judgment to doctor where doctor concluded that inmate "did not have high enough liver enzyme levels ... and thus plaintiff did not qualify for the treatment" of his Hepatitis C); Chamberlain v. Clarke, 2014 WL 2154183 (W.D. Va. May 22, 2014) (same); Chamberlain v. Russell, 22014 WL 824009 (W.D. Va. 2014) (physician's decision not to treat prisoner's Hepatitis C not indicative of deliberate indifference). Plaintiff here has not shown that he suffered any actual injury stemming from the delay in treating his condition, and absent actual injury a delay in medical treatment does not amount to deliberate indifference. Webb, 281 Fed. App'x at 166.

In short, the uncontroverted evidence here indicates that Dr. Wright did not know of and disregard "an excessive risk" to plaintiff's health or safety, Farmer, 511 U.S. at 835; instead, she made a reasoned decision based on what she believed to be plaintiff's best interest to delay

treating his non-acute Hepatitis C infection until he reached a situation where the treatment would be uninterrupted. Such a decision did not constitute deliberate indifference to plaintiff's serious medical need. Plaintiff's argument to the contrary in his Opposition to the Motion for Summary Judgment amounts to no more than his disagreement with medical personnel over the proper course of his treatment, which is insufficient to state a cause of action under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

## IV. Conclusion

For the foregoing reasons, Dr. Wright's Motion for Summary will be granted, and final judgment will be entered in her favor. Nurse Johnson will be dismissed from the action, without prejudice, pursuant to Fed. R. Civ. P. 4(m). An appropriate Order and Judgment shall issue.

Entered this ___20___ day of ___April_____ 2016.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge